IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Chemoil Latin America Inc. § | |
| § | |
| Plaintiff, § | |
| § | C.A. NO.  4:17-cv-00813 |
| v. § | |
| § | |
| Cinque Terre Financial Group Ltd. and its § | IN ADMIRALTY, Rule 9(h) |
| alter egos Elemento, Ltd. (formerly CT § | |
| Energia Ltd.),  Cinque Terre Peru S.A.C., § | |
| Ruben Alejandro Goldstein (a/k/a Alex § | |
| Goldstein), Alessandro Bazzoni, and Richard § | |
| Rothenberg (holder of United States  Passport § | |
| No.: 473468141) (collectively § | |
| "CTFG/ELEMENTO/Elemento") § | |
| § | |
| Defendants, and § | |
| § | |
| SK Energy Americas, Inc. § | |
| § | |
| Garnishee. § | |

**FIRST AMENDED VERIFIED COMPLAINT WITH REQUEST FOR ISSUANCE OF
PROCESS OF MARITIME ATTACHMENT AND GARNISHMENT
AND REQUEST FOR A WRIT OF ORIGINAL ATTACHMENT**

Chemoil Latin America Inc. ("Chemoil") hereby, pursuant to Fed. R. Civ. P. 15(a)(1) amends its complaint, bringing this action against defendant Cinque Terre Financial Group Ltd. including its alter egos Elemento, Ltd. (formerly CT Energia Ltd.),  Cinque Terre Peru S.A.C., Ruben Alejandro Goldstein (a/k/a Alex Goldstein), Alessandro Bazzoni, and Richard Rothenberg (holder of United States  Passport No.: 473468141) (collectively herein "CTFG/ELEMENTO") all *quasi in rem* pursuant to Supplemental Rule B for Certain Admiralty and Maritime Claims, Fed. R. Civ. P. 64, and  Tex. Civ. Prac. & Rem. Code § 61.001 et seq. and for a cause of action states as follows:

**Jurisdiction and Venue**

1. This is an action within this Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and is an admiralty or maritime claim within Supplemental Rule B and Fed. R. Civ. P. 9(h), in that it involves the breach of a maritime contract, or in the alternative, a maritime tort, namely, the taking of maritime property by fraud. This action further is within this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332 in that defendant Richard Rothenberg is a citizen of the United States with a residence in Florida, Chemoil is a Panama corporation, and the amount in controversy exceeds $75,000 exclusive of interest and costs, and further proceeds against all remaining defendants under the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367. This action further is within this Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331 in that defendants as detailed herein have violated the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* Finally, this case further is within this Court's original jurisdiction pursuant to 28 U.S.C. §§ 1334 ("Bankruptcy cases and proceedings") in that it is a proceeding related to the case proceeding before the United States Bankruptcy Court, Southern District of New York, addressed in further detail below, under Chapter 15 of Title 11, concerning defendant Cinque Terre Financial Group Ltd.

2. Venue is proper in this Court because the Garnishee is located and can be found in this District and because property in which CTFG/ELEMENTO has an interest, namely, accounts payable from the Garnishee, is under the control of the Garnishee and therefore is or soon will be in this District. CTFG/ELEMENTO including its alter egos cannot be found in this District within the meaning of Supplemental Rule B.

**The Parties**

3. Chemoil is a Panama corporation with its offices in Panama City, Panama which buys and sells fuel for the provision to and operation of ocean-going vessels.

4. CTFG/ELEMENTO as described in greater detail herein is a conglomeration of purported British Virgin Islands, Maltese and Peruvian companies owned and/or controlled by the same individuals, their alter egos, Ruben Alejandro Goldstein (a/k/a Alex Goldstein), Alessandro Bazzoni and Richard Rothenberg. Ruben Alejandro Goldstein (a/k/a Alex Goldstein), Alessandro Bazzoni and Richard Rothenberg have used the name of CTFG/ELEMENTO to purchase and resell, as detailed herein, certain cargoes of naptha, including from Petroperu and to Garnishee, and to take for themselves at least **US$3,948,502.41** from Chemoil as detailed herein.

5. Chemoil also alleges that Cinque Terre Financial Group, Ltd. and Alessandro Bazzoni are one and the same. Alessandro Bazzoni branded all of his companies with the "Cinque Terre" or "CT" moniker, which is an abbreviation for "Cinque Terre." Alessandro Bazzoni has claimed that the "Cinque Terre" name refers to his family's roots and ownership interests in property in the Cinque Terre region of Italy – a cluster of five villages on the Italian Riviera. CTFG/ELEMENTO throughout the time pertinent to this Complaint, have interchangeably used the names "Cinque Terre," "CT" and "CT Energia" to refer to their collective operations, which have continued into the operations of their alter-ego, defendant Elemento, Ltd.

6. Chemoil alleges that Alessandro Bazzoni has abused corporate form such that he should be personally liable for the debts of Cinque Terre Financial Group, Ltd. On information and belief, Chemoil alleges that Bazzoni used Cinque Terre Financial Group, Ltd.'s and successors' accounts to purchase personal property, including a vacation home in Palm Beach, Florida and renovations to a friend's home in Bridgehampton, New York; to pay for personal expenses, including among other things, medical expenses, automobiles, luxury travel for himself and his friends, and expenses associated with horses and fees for participating in polo

tournaments all over the world.  Alessandro Bazzoni has used a web of companies that he controls to orchestrate a complex fraud against Chemoil and others to avoid repayment of funds owed to Chemoil and others.

7. Richard Rothenberg was Chief Financial Officer of Cinque Terre Financial Group, Ltd., a de facto director of Cinque Terre Financial Group, Ltd., and appears to have been involved in a number of the Company's transactions, as well as a key member of the management team.  He also as detailed below has continued to be involved as a Director of the alter egos of Cinque Terre Financial Group, Ltd.  Richard Rothenberg is the holder of United States  Passport No.: 473468141, a United States citizen and a resident of the state of Florida.

8. Ruben Alejandro Goldstein was Chief Operating Officer of Cinque Terre Financial Group, Ltd. and was listed as the Director of Marketing for another entity within the group of companies connected to Cinque Terre Financial Group, Ltd.,  CT Energia Holding Limited, and as detailed below holds interest in other affiliated companies, including in Peru.

9. Cinque Terre Financial Group Ltd. was a company incorporated in the British Virgin Islands ("BVI") on March 12, 2008.  Defendant Alessandro Bazzoni has always been the sole director and member of Cinque Terre Financial Group Ltd. until Cinque Terre Financial Group Ltd. was on April 11, 2016 placed into involuntary liquidation proceedings in BVI.  Defendant Richard Rothenberg was the Chief Financial Officer , and Ruben Alejandro Goldstein (a/k/a Alex Goldstein) the Chief Operating Officer of Cinque Terre Financial Group Ltd.  Following the initiation of the BVI proceedings, on April 27, 2016, the BVI Liquidator filed in the United States Bankruptcy Court for the Southern District of New York, a a Chapter 15 petition for recognition of the BVI liquidation, Case No. 16-11086 (JLG).

10. The U.S. Bankruptcy Court recognized the BVI liquidation proceding  on June 21, 2016 (recognition order, **Exhibit A hereto**).   Chemoil proceeds here with the permission of

the liquidator ("Foreign Representative" in Chapter 15) to secure payment of the amounts owed to Chemoil by CTFG/ELEMENTO which are also property of the BVI liquidation estate.

11.     CTFG/ELEMENTO has been engaged in a range of fraudulent activities, as detailed herein.  Ernst & Young Switzerland only audited the financial statements of Cinque Terre Financial Group Ltd. for the period ending 31 December 2008, with the corresponding audit report being issued on 26 June 2009.  Cinque Terre Financial Group Ltd. , however, caused counterfeit audit reports ( issued over the name of Ernst & Young) to be issued for  2010 and 2011.  Ernst & Young in 2012 confirmed to defendant Richard Rothenberg that these reports were counterfeit.  Defendant Alessandro Bazzoni utilized the counterfeit audit reports, including ones dated in 2013 and 2014, to misrepresent the financial position of Cinque Terre Financial Group Ltd.

12.     After the commencement of the BVI liquidation, defendants Alessandro Bazzoni, Richard Rothenberg and Ruben Alejandro Goldstein continued the operations of Cinque Terre Financial Group, Ltd., by information and belief, using resources of Cinque Terre Financial Group, Ltd., through other foreign corporate entities which they controlled, including but not limited to defendant CT Energia Ltd.  (later renamed "Elemento, Ltd.")  formed in another jurisdiction, Malta.   By information and belief, defendants Alessandro Bazzoni, Richard Rothenberg and Ruben Alejandro Goldstein created this new CT Energia Ltd.  (later renamed "Elemento, Ltd.")  along with two other "Cinque Terre" entities, CT Energia Holding Ltd. and CT Energia Oil and Gas Ltd, all in Malta. Collectively these businesses held themselves out as "CT Energia" for the purpose of using their new Maltese corporate form to avoid paying the Cinque Terre Financial Group, Ltd. debt to Chemoil. To further frustrate Chemoil's and others' efforts to collect debt, by information and belief, defendants Alessandro Bazzoni, Richard

Rothenberg and Ruben Alejandro Goldstein stripped the Maltese companies of their apparent "CT Energia" connection, and renamed them "Elemento."

13. Defendant CT Energia Ltd. d/b/a Elemento Ltd. is a Maltese company, wholly owned by defendant CT Energia Holding, Ltd., which in turn is owned and controlled by defendant Bazzoni. In or about July 25, 2016, by information and belief, defendants Alessandro Bazzoni, Richard Rothenberg and Ruben Alejandro Goldstein caused a filing in Malta to change the name of Defendant CT Energia Ltd. to "Elemento Ltd."

14. Documents in the Malta corporate registry confirm that on December 9, December 2015, "CT Energia Holding Ltd" (another Maltese company) purported to transfer 1165 Ordinary shares in the company to "CT Energia Oil and Gas Ltd." At this time, defendants Alessandro Bazzoni and Richard Rothenberg were directors of CT Energia Ltd. On January 13, 2016, Richard Rothenberg resigned as director; Francisco D'Agostino was appointed as a director. Then, on June 21, 2016, the company name was changed from CT Energia Ltd to Elemento Ltd. Finally on August 18, 2016 – Alessandro Bazzoni and Francisco D'Agostino resigned as directors and Richard Rothenberg was reappointed as a director (along with Carlos Galindez Arias).

15. Defendant CT Energia Ltd. d/b/a Elemento Ltd. is sued in its capacity as an alter ego of, and as controlled and/or operated by defendants Alessandro Bazzoni, Richard Rothenberg and Ruben Alejandro Goldstein, and as such, is liable to Chemoil to the same extent as the other defendants.

16. Documents in the Malta corporate registry confirm that on February 4, 2016, Alessandro Bazzoni, sole owner of CT Energia Oil & Gas Ltd, transferred 1000 Ordinary shares of the company to Francisco D'Agostino. Then, on June 22, 2016, the company changed its name from CT Energia Oil & Gas Ltd To Elemento Oil & Gas Ltd . On August 19, 2016,

Alessandro Bazzoni and Francisco D'Agostino resigned as directors, and Richard Rothenberg was appointed as director (also along with Carlos Galindez Arias).

17. Cinque Terre Peru S.A.C. is a Peruvian company founded in 2012. It has one employee, its General Manager Jesus J. F. Pereyra. Defendants Alessandro Bazzoni and Ruben A. Goldstein are the owners of Cinque Terre Peru S.A.C.

18. Garnishee SK Energy Americas ("Garnishee") is an entity with an office located in this District which holds accounts which are the property of and/or owing to CTFG/ELEMENTO (including its alter egos).

## Facts

19. Chemoil entered into a contract dated 15 August 2014 as sellers with Cinque Terre Financial Group, Ltd. as buyers for the sale and purchase of 40,000 barrels +/-10% in Buyer's option of Marine Gas Oil (MGO) for delivery on FOB ("free on board") Incoterms via pump out from Decal Taboguilla via two separate barge loadings Panama between 19-28 August 2014 (the "Contract"). MGO is a fuel specially and uniquely formulated for maritime use, aboard ocean-going and inland waterways vessels. Chemoil's MGO was for carriage aboard and then use aboard ships and therefore the contract for its sale was and is a maritime contract.

20. On or about August 19, 2014, Al Alpha, apparently employed by Cinque Terre Financial Group, Ltd. , confirmed the contract and arrangements for the vessel the contract required (M/T CENTENARIO TRADER (IMO No. 7367275) , using the email alpha@ctenergia.com . The company named "CT Energia," as set out above, is one which defendants caused to be renamed, later, Elemento, Ltd. Al Alpha now is employed, by information and belief, by Elemento, Ltd.

21. The Chemoil contract (Confirmation, **Exhibit B hereto**) expressly was subject to English law and was and is an agreement relating to the carriage of goods in a ship or to the use

or hire of a ship, providing including the following:

> I) BUYERS SHALL PROCURE THAT **THE VESSEL SHALL** COMPLY WITH THE REQUIREMENTS OF THE INTERNATIONAL CODE FOR THE SECURITY OF SHIPS AND OF PORT FACILITIES AND THE RELEVANT AMENDMENTS TO CHAPTER XI OF SOLAS (ISPS CODE) AND WHERE THE LOADING PORT IS WITHIN THE USA AND US TERRITORIES OR WATERS, WITH THE US MARITIME TRANSPORTATION SECURITY ACT 2002 (MTSA),
>
> II) **THE VESSEL SHALL** WHEN REQUIRED SUBMIT A DECLARATION OF SECURITY (DOS) TO THE APPROPRIATE AUTHORITIES PRIOR TO ARRIVAL AT THE LOADING PORT.
>
> III) NOTWITHSTANDING ANY PRIOR **ACCEPTANCE OF VESSEL** BY SELLER, IF AT ANY TIME PRIOR TO THE PASSING OF RISK AND TITLE THE VESSEL CEASES TO COMPLY WITH THE REQUIREMENTS OF THE ISPS CODE OR MTSA:
>
> VESSEL AND ANY DEMURRAGE RESULTING SHALL NOT BE FOR THE ACCOUNT OF THE SELLER.
>
> B) BUYER SHALL BE OBLIGED TO SUBSTITUTE SUCH **NOMINATED VESSEL** WITH A VESSEL COMPLYING WITH THE REQUIREMENTS OF THE ISPS CODE AND MTSA.

(Emphasis added).

22.     CTFG/ELEMENTO chartered or hired the ship M/T CENTENARIO TRADER (IMO No. 7367275) and Chemoil accepted the ship M/T CENTENARIO TRADER, pursuant to the parties' maritime contract, for receipt of and carriage of the Chemoil Marine Gas Oil (MGO). The MGO was maritime property, namely, fuel specifically formulated for use on ships. The M/T CENTENARIO TRADER received the MGO at Decal, Panama, and then sailed with the MGO to Taboguilla Island, Panama. The M/T CENTENARIO TRADER sailed to Taboguilla Island, Panama with two separate ocean shipments, 40,548.401 barrels of MGO by way of a first delivery of 22,611.891 barrels on 21 August 2014 and a second delivery of 17,936.510 barrels on 24 August 2014.

23.     The M/T CENTENARIO TRADER was then and still is owned by Bunker

Vessel Management, S.A., Panama. That company's website (http://tradertanker.com) listing the vessel, explains "We are a corporation dedicated to the transport and supply of **marine fuels** inside and outside the Republic of Panama." (emphasis added).

24. For each of the two shipments, Chemoil issued a distinct Marine Fuel Delivery Receipt (**Exhibits C and D hereto**). Each Marine Fuel Delivery Receipt stated the name of the Vessel, M/T CENTENARIO TRADER. The Master or Chief Engineer signed each Marine Fuel Delivery Receipt, confirming as follows:

> The marine fuel described herein in delivered in accordance with Chemoil Standard Terms and Conditions of Sale (a copy of which has been provided to buyer prior to delivery) and on credit of the vessel. Any disclaimers as to the creation of a maritime lien in the amount of the purchase price and delivery charges and/or restrictions as to the authority of the ship's officer signing this Receipt to bind the vessel and her owner to the above are null and void, unless an authorized representative of Chemoil shall have otherwise agreed in writing at the time Buyer initially orders the marine fuel. Failing such agreement, delivery shall, under no circumstances, eonstitute a waiver by Chemoil of the above.

\* \* \*

### DECLARATION OF MASTER/CHIEF ENGINEER

> I declare that the information given above is true and correet to the best of my knowledge and belief; that I have knowledge of the facts set forth herein; that the articles described in the notice of lading were received in the quantities were laden on the vessel named above for use on said vessel as supplies, except as noted below.
>
> Received for use as bunkers, together with representative sample, the quantities shown above. Exact quantities shown are subject to correction in case of error:

25. Chemoil issued its invoices in respect of each of the deliveries on 17 September 2014 (albeit dated 31 August 2014). These invoices totalled US$4,948,502.41.

26. CTFG/ELEMENTO made only one payment to Chemoil of US$1,000,000 against the outstanding amount, leaving a balance of US$3,948,502.41 due and owing (not including interest).

27. On October 8, 2014, Richard Rothenberg (using the email address

9

(rr@ctenergia.com – again, the "CT Energia" company later renamed "Elemento, Ltd.") wrote Chemoil as follows:

> We are aware of the outstanding invoice we have to you. We had asked for the invoice to be sent, but it never came. We understand that there was an switchover in your financing department that caused the delay of the invoice. However, our LC and financing has expired, and we need to arrange new financing which we are doing currently. I will revert with the expected timing on that, but we expect it will be finalized by the middle of next week.
>
> Thanks,
> Richard Rothenberg
> Chief Financial Officer
> CT Energia, Ltd.

28. Thereafter through the use of the wires, namely, email and telephone, CTFG/ELEMENTO repeatedly misrepresented to Chemoil that they would pay Chemoil, as follows:

(a) In November 2014, CTFG/ELEMENTO proposed assigning proceeds and selling crude oil to Chemoil, but never followed through with the proposals;

(b) In December 2014, CTFG/ELEMENTO advised that they would make a $1,000,000 payment to Chemoil by year end, but never made that payment;

(c) In February, 2015, CTFG/ELEMENTO advised that it would make a $1,000,000 payment to Chemoil on February 17th-18th, failed again to make payment and then offered a payment plan, however, never provided that plan;

(d) In April, 2015, CTFG/ELEMENTO made a further payment plan proposal, but again Chemoil received no payment.

(e) In May, 2015, CTFG/ELEMENTO misrepresented that it was engaging in a financial restructuring and promised a payment of $100,000, which again was never made.

29. After many months of correspondence with CTFG/ELEMENTO in which a

10

payment plan was discussed, it became evident that CTFG/ELEMENTO did not intend to honor any of its promises and in fact had misrepresented its intent to do so, on which Chemoil had relied in good faith.

30.     On or about February 10, 2017, however, CTFG/ELEMENTO purchased 220,000 bbls of naptha from Petroperu, the state oil company of Peru, at a price that is US$2/bbl above the market price. A copy of the Petroperu confirmation of this purchase is **Exhibit E hereto**, naming Alex Goldstein as the contact for "Cinque Terre Financial Group, Ltd."

31.     In negotiating the transaction with Petroperu, CTFG/ELEMENTO and by information and belief, defendant Alex Goldstein and/or Jesus Pereyra Arizola, General Manager of Cinque Terre-Peru, represented that defendant Alessandro Bazzoni was then the Chief Executive Officer of Cinque Terre Financial Group, Ltd. At this time, however, Cinque Terre Financial Group, Ltd. was (and continues to be) in the BVI liquidation proceedings. CTFG/ELEMENTO and by information and belief, defendant Alex Goldstein and/or Jesus Pereyra Arizola, General Manager of Cinque Terre-Peru, requested that the bill of lading for the transaction be issued in the name of Elemento, Ltd., which they represented to Petroperu to be the financial arm of Cinque Terre Financial Group, Ltd. Jesus Pereyra Arizola, General Manager of Cinque Terre-Peru wrote Petroperu on or about February 10, 2017 as follows:

> 1.- On Friday, the CEO of Cinque Terre, Mr. Alessandro Bazzoni, will send the formal acceptance of the last tender of Virgin Naphta won by Cinque Terre, to your direction. Please confirm your receipt of the same. Thank you.
>
> 2.- Also, for any formal communication between both parties, the new fax number of the company is the following: +44 207 691 7889.
>
> 3.- And lastly and to communicate by instructions of the CEO Sr. Alessandro Bazzoni that the foreign counterpart, outside myself and Mr. Joaquin Garcia, who will be in charge of coordinating and necessary details of the operations of the Virgin Naphta with you or any persons within PetroPeru, in this case will be Mrs. Dolly Mendoza (Direct Phone: 00-58-416-8250694). She will also have your cell number to communicate directly with you. I await your further comments.

11

>Best regards,
>Atte
>
>Jesus Pereyra Arizola
>Cinque Terre
>Representante en Lima Peru
>Cel (51) 947-169893

32. CTFG/ELEMENTO by information and belief paid Petroperu for the cargo, sending Petroperu original documentary instructions for the cargo bill of lading to be made out to Cinque Terre Financial Group, Ltd.  Later, CTFG/ELEMENTO requested Petroperu to issue the bill of lading to Elemento, Ltd., however, Petroperu refused.  This was because the sale of the naphtha cargo could only be made by Petroperu to a holder of a license to purchase from Petroperu, namely, Cinque Terre Financial Group, Ltd.  Both Alessandro Bazzoni and Joaquin Garcia corresponded with Petroperu as being affiliated with "CTE Ltd."

33. The naptha cargo purchased by CTFG/ELEMENTO is or very soon will be loaded aboard a vessel in Peru, chartered by Garnishee.  By information and belief, the cargo is being carried under a bill of lading issued to Cinque Terre Financial Group, Ltd., the license holder for purchase from Petroperu and receipient of the February 17, 2017 Petroperu award for that purchase.  Chemoil believes that, according to standard commercial transactions of this type, Garnishee will upon loading of the naptha cargo transfer to CTFG/ELEMENTO payment for the cargo.

34. Chemoil now understands from the Garnishee, that the Garnishee is withholding payment for the cargo, subject to the writ issued in this action and served on the Garnishee, and further order of this Court.

## Count I – Breach of Maritime Contract

35. Chemoil incorporates the above paragraphs as if fully set forth herein.

36. CTFG/ELEMENTO including through its alter egos has breached its maritime contract with Chemoil as set out above. Despite repeated demand, Chemoil remains unpaid.

37. Chemoil therefore demands judgment, as set out more fully below.

### Count II: Maritime Attachment and Garnishment (Rule B)

38. Chemoil incorporates the above paragraphs as if fully set forth herein.

39. This Court should order the issue of a writ of maritime attachment and garnishment to Garnishee(s) to attach the property ( including accounts payable) held or owed by Garnishee for or to CTFG/ELEMENTO including its alter egos.

40. CTFG/ELEMENTO cannot be found within this District within the meaning of Rule B, and has pendency of this action, property and/or assets in this jurisdiction consisting of cash, funds, freight, hire, and/or credits in the hands of Garnishee, a garnishee in this District.

### Count III: Prejudgment Attachment
### (Tex. Civ. Prac. & Rem. Code § 61.001 et seq.)

41. Chemoil incorporates the above paragraphs as if fully set forth herein.

42. CTFG/ELEMENTO is justly indebted to Chemoil because it failed to pay US$3,948,502.41 for MGO provided by Chemoil as required by the parties' contract dated 15 August 2014.

43. Chemoil does not seek attachment for the purpose of injuring or harassing CTFG/ELEMENTO. Chemoil merely seeks to recoup the losses incurred by CTFG/ELEMENTO's breach of contract.

44. Chemoil will probably lose its debt unless the writ of attachment is issued because it has become evident that CTFG/ELEMENTO does not intend to honor its promise to pay Chemoil for the MGO it provided.

45. Cinque Terre Financial Group Ltd. and Elemento, Ltd. are foreign corporations and Ruben Alejandro Goldstein, Alessandro Bazzoni and Richard Rothenberg are not residents of the State of Texas.

46. This Court should order the issue of a writ of original attachment and garnishment to Garnishee(s) to attach the property (including accounts payable) held or owed by Garnishee for or to CTFG/ELEMENTO including its alter egos. In support of its request, Chemoil attaches an affidavit hereto setting forth the grounds for its issuance and the amount of its demand.

## Count IV: Fraud – Maritime Tort

47. Chemoil incorporates the above paragraphs as if fully set forth herein.

48. CTFG/ELEMENTO defrauded Chemoil by misrepresenting to Chemoil that CTFG/ELEMENTO had the ability to pay for the Marine Gas Oil which CTFG/ELEMENTO took from Chemoil.

49. CTFG/ELEMENTO knew that its misrepresentations of solvency and intention to pay were false when it made them, and it made the misrepresentations with the intention that Chemoil rely on them.

50. Chemoil reasonably relied on the misrepresentations of CTFG/ELEMENTO, which it would not have done had CTFG/ELEMENTO disclosed the truth of its situation including intention to pay for Chemoil's Marine Gas Oil.

51. Chemoil was damaged as the result of its reasonable reliance on the CTFG/ELEMENTO misrepresentations. Chemoil's Marine Gas Oil was maritime property and its taking by fraud constitutes a maritime tort.

52. Chemoil therefore demands judgment, as set out more fully below.

## Count V: Civil RICO

53. Chemoil incorporates the above paragraphs as if fully set forth herein.

54. Ruben Alejandro Goldstein (a/k/a Alex Goldstein), Alessandro Bazzoni, and Richard Rothenberg violated 18 U.S.C. §1962 (c) by being associated with an enterprise which affects interstate or foreign commerce to conduct or to participate, directly or indirectly, in the conduct of such enterprises affairs through a pattern of racketeering activity.

55. Ruben Alejandro Goldstein (a/k/a Alex Goldstein), Alessandro Bazzoni, and Richard Rothenberg violated 18 U.S.C. §1962(d) by conspiring to violate 18 U.S.C. § 1962(c).

56. A RICO Act claim under 18 U.S.C. §§ 1962(c) and (d) requires a plaintiff to prove: (1) a person engaged in (2) a pattern of racketeering activity connected to (3) the conduct or control of an enterprise.

57. Person: Ruben Alejandro Goldstein (a/k/a Alex Goldstein), Alessandro Bazzoni, and Richard Rothenberg all qualify as "persons" under 18 U.S.C. § 1961(3). Each Defendant in this suit is an "individual or entity capable of holding a legal or beneficial interest in property" and, as such, each constitutes a "person" within the meaning of 18 U.S.C. § 1961(3).

58. Racketeering Activity: A "racketeering activity" as defined by 18 U.S.C. § 1961(1) includes, inter alia, wire fraud. Ruben Alejandro Goldstein (a/k/a Alex Goldstein), Alessandro Bazzoni, and Richard Rothenberg committed the "racketeering activity" of wire fraud and the crime is punishable with imprisonment for more than one year.

59. The Defendants are engaged in interstate and foreign acts of commerce and the acts alleged herein have an effect on commerce.

60. 18 U.S.C. § 1343 (Wire Fraud): Ruben Alejandro Goldstein (a/k/a Alex Goldstein), Alessandro Bazzoni, and Richard Rothenberg devised a scheme or artifice to defraud by means of wire communication in interstate and foreign commerce.

61. Ruben Alejandro Goldstein (a/k/a Alex Goldstein), Alessandro Bazzoni, and Richard Rothenberg participated in an association in fact. They participated in an ongoing

15

organization and each associate functioned as a continuing unit. The individuals and the entities run by the individuals associated together to commit several criminal acts as set forth herein which gave their association an ongoing nature allowing it to come within the purview of the RICO Act. Thus, their association in fact constituted an enterprise within the meaning of 18 U.S.C. § 1961(4).

62. In the alternative, the alleged corporate entities included in CTFG/ELEMENTO are legal entities constitututing an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c). Ruben Alejandro Goldstein (a/k/a Alex Goldstein), Alessandro Bazzoni, and Richard Rothenberg are "persons," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually conducted, participated in, engaged in, and operated and managed the affairs of the alleged corporate entities included in CTFG/ELEMENTO through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). Said pattern of racketeering activity consisted of, but was not limited to, the acts wire fraud described supra.

63. As a direct and proximate result of the Defendants' violations of 18 U.S.C. §§ 1962(c) and (d) Chemoil has suffered injury to business, property and livelihood.

64. The injuries suffered by Chemoil were reasonably foreseeable or anticipated by Ruben Alejandro Goldstein (a/k/a Alex Goldstein), Alessandro Bazzoni, and Richard Rothenberg as the natural consequence of their acts.

65. Chemoil seeks treble damages, 18 U.S.C. § 1964(c).

## Prayer for Relief

WHEREFORE, Chemoil prays:

A. That in response to Counts I and IV, this Court enter judgment against CTFG/ELEMENTO and in favor of Chemoil in the amount of at least **US$3,948,502.41** plus an

additional 50% as provided in Supplemental Admiralty and Maritime Rule E, to allow for accrued interest, fees and costs;

  B. That in response to Count II, since CTFG/ELEMENTO cannot be found within this District pursuant to Supplemental Rule B, this Court maintain the Process of Maritime Attachment and Garnishment pursuant to Rule B and served on Garnishee, attaching all of CTFG/ELEMENTO's tangible or intangible property or any other funds held by such garnishee, up to the amount of at least the amount demanded herein to secure Chemoil's claims, and that this Court require Garnishee to appear and, pursuant to Supplemental Rule B, answer the matters alleged in the Verified Complaint;

  C. That as provided in Supplemental Rule B, that such person over 18 years of age be appointed as moved for herein pursuant to Supplemental Rule B and Fed.R.Civ.P. 4(c) to serve any supplemental process of Maritime Attachment and Garnishment in this action; and that this Court award Chemoil such other and further relief that this Court deems just and proper.

  D. That in response to Count III, this Court issue a writ of original attachment returnable to this Court, attaching all of CTFG/ELEMENTO's tangible or intangible property or any other funds held by such garnishee, up to the amount of at least the amount demanded herein to secure Chemoil's claims.

  E. That in response to Count V, this Court enter judgment against CTFG/ELEMENTO and in favor of Chemoil in the amount of at least **US$3,948,502.41**, that amount trebled pursuant to 18 U.S.C. § 1964(c).

  F. That in response to each Count and claim herein, that this Court enter judgment

for Chemoil for all just and proper relief, including interest, costs and attorneys fees.

Dated:  April 3, 2017.

>/s/ *J. Stephen Simms*
>J. Stephen Simms (*pro hac vice*)
>Simms Showers LLP
>201 International Circle, Suite 250
>Baltimore, Maryland 21030
>Telephone:     410-783-5795
>Facsimile:     410-510-1789
>jssimms@simmsshowers.com
>
>Attorneys for Chemoil Latin America Inc.

## VERIFICATION

I am a Principal of the law firm Simms Showers LLP, counsel to Plaintiff.

The facts alleged in the foregoing First Amended Verified Complaint are true and correct to the best of my knowledge and information based upon the records of Plaintiff made available to me by Plaintiff.  Authorized officers of Plaintiff are not readily available in this District to make verifications on Plaintiff's behalf.  I am authorized to make this verification on Plaintiff's behalf.  I further certify that, pursuant to Supplemental Rule B, I caused a search to be made of electronic records and Directory Assistance for addresses and telephone numbers in the Southern District of Texas.  There is no record of any general or resident agent authorized to accept service of process for any Defendant in this District.

Defendants are justly indebted to Chemoil because they failed to pay US$3,948,502.41 for MGO provided by Chemoil as required by the parties contract dated 15 August 2014. Chemoil does not seek attachment for the purpose of injuring or harassing Defendants. Chemoil merely seeks to recoup the losses incurred by Defendants' breach of contract.

Chemoil will probably lose its debt unless the writ of attachment is issued because it has

become evident that Defendants do not intend to honor their promise to pay Chemoil for the MGO they provided. Cinque Terre Financial Group Ltd. and Elemento, Ltd. are foreign corporations and Ruben Alejandro Goldstein, Alessandro Bazzoni and Richard Rothenberg are not residents of the State of Texas.

Pursuant to 28 U.S.C. § 1746(1), I solemnly declare under penalty of perjury that the foregoing is true and correct.

Executed on April 3, 2017.

/s/ *J. Stephen Simms*
J. Stephen Simms